DUN & BRADSTREET, INC., Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, Special Term, New York County, June 23, 1938.

*Patterson, Eagle, Greenough & Day* [*William Greenough, Carroll G. Walter, Philip J. Dunn* and *Arthur J. O'Leary* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel* [*Oscar S. Cox, Solomon Charles Levine* and *Edmund B. Hennefeld* of counsel], for the defendants.

PECORA, J. This action for a declaratory judgment has come before me for trial. The plaintiff seeks a judgment which will determine that it is not taxable under the local laws which were adopted by the city of New York, in virtue of the authority of chapter 873 of the Laws of 1934. The local laws (No. 20, published as No. 21, adopted in 1934 and amended by Local Law No. 24, published as No. 25 of 1934) imposed a tax upon receipts from sales of tangible personal property and upon services furnished by certain public utility companies. The plaintiff is engaged in the business of furnishing confidential information to subscribers as to the financial standing and credit of persons with whom the subscribers might intend to transact business or to whom they might desire to furnish credit.

Prior to the bringing of the suit the city comptroller had adopted regulations, including within the liability under the sales tax, receipts by persons engaged in the business of selling a personal service, such as a financial news service and trade service, supplemented by printed matter, title to which remains in the vendor. Previous to the adoption of the rule the comptroller had followed one in direct contradiction to it and had exempted such receipts from the tax.

Before serving an answer, defendants moved under rule 106 of the Rules of Civil Practice to dismiss the complaint. This motion was denied in Special Term, and, after reversal by the Appellate Division, the Court of Appeals sustained the ruling that the complaint was sufficient (*Dun & Bradstreet, Inc.,* v. *City of New York*, 276 N. Y. 198). Thereupon an answer was served, denying certain allegations of the plaintiff relating to its method of doing business, and at appropriate stages of the trial defendant made motions to dismiss the complaint.

Defendants presented no independent testimony, but relying upon plaintiff's proof and the cross-examination of its witnesses, they made a motion to dismiss at the close of plaintiff's case upon two grounds: *First*, that a declaratory judgment did not lie because plaintiff had an adequate remedy under the tax statutes, which remedy is exclusive; *second*, that plaintiff had failed to make out

a cause of action, in that the proof showed that the business alleged to be the furnishing of services, was in reality mainly that of the sale of the use of expensive reference books.

In connection with the first ground, defendants argue that the determination of the Court of Appeals that declaratory judgment was applicable was based upon a complaint, the truth of which was assumed for the purposes of the motion to dismiss under rule 106 of the Rules of Civil Practice. Now that there are denials raising issues of fact they argue that declaratory judgment is no longer applicable. This reasoning assumes that the remedy only avails where an issue of fact does not exist. The discretion of the court to entertain an action of declaratory judgment is not thus limited. The language of rule 213 of the Rules of Civil Practice indicates the possibility of the existence of questions of fact which might have to be submitted to a jury. (*Woollard* v. *Schaffer Stores Co.*, 272 N. Y. 304.) In any event, the disposition of the case of *Young Men's Christian Association* v. *City of New York* (159 Misc. 539; affd., 251 App. Div. 821; affd., 276 N. Y. 619) indicates that the courts have not taken defendants' position.

In the last case cited an action was brought for judgment of declaration that plaintiff, as a semi-charitable institution, was not liable for the payment of sales taxes under the local law. An answer was interposed denying the allegations as to the semi-charitable character of the activities of plaintiff. The issues were tried, and a preliminary motion of defendant to dismiss on the ground that declaratory judgment did not lie, was denied. Final declaratory judgment was entered in favor of plaintiff, coupled with injunctive relief, and this determination was affirmed both by the Appellate Division and the Court of Appeals without opinion. The facts as to the nature of the pleadings and the character of the judgment appear in the printed records of the case which I have examined to supplement the meagre information furnished by the memorandum opinion.

Upon the argument in the case at bar, defendant stressed the language in *Lewis* v. *City of Lockport* (276 N. Y. 336) to the effect of the exclusiveness of the legal remedy in a tax matter, as an argument why plaintiff should follow the general procedure for recovering taxes improperly assessed, instead of seeking a declaratory judgment. The apparent grounds upon which defendant relied were that the case was decided a few days after the decision of the Court of Appeals in the instant case. That ground is untenable, not only because of the failure of the Court of Appeals in the later case to make any mention of the case under consideration, but also because the still later affirmance of the case of *Young*

*Men's Christian Association* (*supra*) indicates that there has been no change of view by the Court of Appeals on the question of the applicability of a declaratory judgment in such circumstances.

The argument that the *Lewis* case was based upon a situation where there was an answer which raised the question of the adequacy of the remedy at law, is also untenable. That point, also involved in the later case of *Young Men's Christian Association*, was disregarded by the Court of Appeals.

A consideration of the reasons for permitting an action for a declaratory judgment in the case at bar shows that it involves most of the reasons given in *Socony-Vacuum Oil Co.* v. *Taylor* (247 App. Div. 163; affd., 272 N. Y. 668). The avoidance of multiplicity of suits and circuity of actions and the lack of adequate remedy to plaintiff, which is in truth a guaranteeing tax collector and not a taxpayer, are cited as grounds for permitting declaratory judgment in that case. These reasons for demanding such relief are all stated in the present complaint. The proof emphasizes the probability of a multiplicity of suits and circuity of actions by showing that there are at least 16,000 subscribers for plaintiff's service in the city of New York, all of whom would otherwise have to be pressed for refunds by independent actions by the plaintiff.

Under the first ground, it was further urged that plaintiff, by presenting certain sales tax returns to the comptroller, had submitted to the jurisdiction, and was estopped from pursuing any other course to obtain adjudication on its exemption, except by the remedy of refund provided in the local law. That point is without merit. The sales tax returns filed by plaintiff deal with certain collateral and incidental parts of the plaintiff's business not involved in the complaint. The income from these features is almost trifling in amount compared with the aggregate receipts of plaintiff.

Moreover, in the *Socony-Vacuum Oil* case the plaintiff, as collector of the gasoline tax, acquiesced in the major part of its liability, its only objection being to the demand that it include the State and Federal taxes on gasoline as an additional basic sales price upon which to compute the two per cent liability under the sales tax. The admission of liability for the greater part of the tax did not estop the plaintiff there from urging the illegality of liability for a small part, by means of the form of action known as declaratory judgment.

It is, therefore, apparent that nothing in the proof has brought any matter which, if presented originally before the Court of Appeals, would have swayed that court in determining that declara-

tory judgment did not lie. The motion on that ground is, therefore, denied.

I shall now consider the second ground for dismissal based upon the contention that upon the trial plaintiff has failed to prove its right to exemption from the sales tax under the evidence in the case. The Court of Appeals has confirmed the right of plaintiff to a declaratory judgment, and has affirmatively ruled that, assuming the allegations of the complaint as true, plaintiff is entitled to the exemption claimed. If upon the trial plaintiff has proved the essential facts upon which the Court of Appeals predicates its right to tax exemption, it must have judgment. The only matter to be considered here, therefore, is whether essential allegations of fact denied in the answer, have been proved.

The main denials that are pertinent here are those directed to the fifth paragraph in the complaint. Defendants deny the allegation that the money paid by subscribers is paid for services, and allege that the subscription contract is really a sale of the reference books, and that the service is only incidental to the sale.

The subscription contract, which is Exhibit A annexed to the complaint, was before the Court of Appeals. It presents a service contract for furnishing credit information, which includes the use of a number of reference books. An aggregate charge is made for the entire service. The subscriber is entitled to obtain reports on a minimum of 50 to 100 commercial names, together with the use of a certain number of reference books. There is no allocation of the charge as between the service and the books.

The testimony shows that a contract for information service might be obtained, which does not include the use of reference books; but the latter are never furnished, except as an integral part of the contract to furnish reports on a specified number of names. An arithmetical calculation shows that contracts for service might be obtained for $125 per annum, but when the use of the reference books is included the charge rises to $500. Using this as a basis the defendant argues that the service charge is only incidental, and that the larger part of the income of the plaintiff is from the use of the reference books. Since the local law by definition, under the word " sale," includes " any transfer of title or possession or both, exchange or barter, license to use or consume conditionally or otherwise," the main transactions of the plaintiff, it is contended, involve a transfer of possession or a license to use, and are accordingly taxable.

The Court of Appeals in its statement said that no charge is made for the use of the reference books separate and apart from the service charge, and that they cannot be obtained separate

and apart from the service furnished to subscribers. It also refers to the confidential nature of the information contained in the books and to the fact that title in them remains in the plaintiff. The evidence at the trial has sustained this proof. Does the fact that the theoretical difference between a service contract without books and one with books is so large — a fact which did not appear in the allegations of the complaint, but developed from the evidence — make a difference in the conclusion to be reached?

An analysis of the opinion in the higher court shows that its determination was influenced almost entirely by the fact that the use of the books was an integral part of the service contract and not a separable one, that the license to use the books was a confidential one and not transferable, and that title in them remained in the mercantile agency. An elucidation of the view of the court in that respect is found in *Howitt* v. *Street & Smith Publications, Inc.* (276 N. Y. 345). In that case the publisher of a magazine paid an illustrator or artist for the right to reproduce sixteen of his paintings. It was expressly understood that there would be no use, consumption, alteration or defacement of the paintings. Although delivery of the paintings into the possession of the publisher was not necessary in order that it reproduce them, nevertheless, they were given into appellant's custody for the purpose of preparing the blue prints. The court held that the transaction was not a license to use, taxable under the sales law, and that " there was no transfer of possession for which a consideration was paid. The consideration was paid for the right merely to reproduce, which could as well be done while still in the possession of the artist as elsewhere." It then refers to its opinion in the instant case, saying that it is similar to the one it was discussing: " In that case the local law was held not to apply to the transaction in which the customers of Dun & Bradstreet paid a consideration for the financial services rendered, though it was contended that there was at least a license to use the reference books furnished in connection with the services." Commenting, however, on the word " use " as employed in the taxing statute, the court said: " We believe that the ordinary interpretation of the word ' use,' is to assert possessory interest in the article for some length of time; in this case to hold the right to exhibit the picture or sell it or tamper with it in some manner to be decided upon by the purchaser. Anything less than this, as merely the right to reproduce, is not such a use as should make this transaction taxable as a sale of tangible personal property."

The quotations from the *Howitt* case indicate the reasons which motivated the court in deciding that the service rendered by the plaintiff was not a taxable use within the purview of the local law. It cannot be contended successfully that the service reports are tangible property, the transfer of possession of which constitutes a sale. Intrinsically the information sheets have no value. If they were not of a confidential nature and were transferable by the subscriber, an argument for taxing them as tangible property might exist. The fact that a subscriber, in violation of his contract, might surreptitiously sell them at a reduced price to another party, does not change the nature of the property.

Similarly, the large reference books which are given as an integral part of the service for confidential use by the subscriber for a period of approximately two months, constitute, in the opinion of the Court of Appeals, a mere service. The mere fact that these books lend themselves to a possible sale by a faithless subscriber to an outside person, much more readily than the sheets of paper which constitute the individual reports, does not convert the transaction into a sale of a use of the books. The intent of the parties to the transaction is the prime consideration, not the possibilities of an illicit sale of the books in violation of the contract. We may say that, theoretically, as in the case of the picture, the subscriber could make use of the information contained by visiting offices of the plaintiff in order to consult the books. The fact that an infinite amount of inconvenience is saved to the subscriber by making the books available in his office, does not change the transaction into a transfer of possession.

Again paraphrasing the language in the *Howitt* case, the subscriber does not obtain the right to exhibit the information contained in the books to another, or sell the information or tamper with it in some manner decided upon by the subscriber. Anything less than this is not such a use as should make this transaction taxable as a sale of tangible personal property. It is also to be observed that the particular reference books in the subscriber's hands are recalled and destroyed by the plaintiff. The use of the information contained in the books for the limited period of two months, without the privilege of assigning or subletting this use, and without a return of the books to the lender as tangible property for further reletting, is another important circumstance. Their use for that period destroys their character as tangible property by reason of the practice of the plaintiff to deface them upon their recall and to convert them into paper stock. On the sale of the latter a tax is collected. The taxable status of the sale of the paper stock is not in question here.

It is evident that the transaction here mentioned differs from the one in *United Artists Corp.* v. *Taylor* (273 N. Y. 334). There, as is observed by the Court of Appeals in the *Howitt* case, there was a transfer by the distributor to the exhibitor of the possession of the positive and negative prints of photoplays with a license to use or exhibit them for a certain time. The transfer of possession was not for confidential purposes, but for exhibition, thus making the use of the property available to a large public at a profit to the exhibitor. If the books in the case at bar, even though loaned, were, by the nature of the contract, permissible of assignment for their use by third parties, the analogy with the *United Artists* case would be fairly complete, and the license to use the books might be deemed a taxable use.

Defendants argue upon the basis of the fact that the loan of the bound reference books adds so largely to the amount paid for the service, that the latter should be regarded as merely incidental to and as a disguised sale of the use of books, although such disguise may be innocent and without intent to evade the law. In answer to this it is to be observed that the large percentage value added to the service by the books is not decisive. The converse of this situation is found in *People ex rel. Walker Engraving Corp.* v. *Graves* (268 N. Y. 648). The question in that case was whether the sale of engraved plates constituted a sale of tangible personal property or a contract for services. The tangible part of the plate constituted only two per cent of the value of the whole, while ninety-eight per cent constituted labor. The court, however, held that it was a sale of the engraved metal plates, because there was a permanent transfer of the property. No separation in value was made between the tangible and the intangible part. In the instant case, the inchoate part attributable to the reference books as a part of the entire service, might be as much as seventy-five per cent. Since, however, the contract is entire and one for service, the proportion does not transform the entire transaction into a sale of the use of tangible personal property.

It might be argued that inasmuch as the local law levies a tax for relief purposes, it should be construed liberally to effectuate those purposes without the allowance of exemptions in too many cases. I should have preferred to decide this way, but the Court of Appeals in the case at bar has said that it is elementary that taxing statutes when of doubtful validity or effect, must be construed in favor of the taxpayer. If the local law does not by its terms impose a tax upon the plaintiffs, the comptroller cannot by the adoption of a rule or regulation impose such a tax. Continuing its expression along this line the court later says: " Certainly it

cannot be successfully contended that the local law clearly and undoubtedly makes appellant subject to a tax. This court, referring to a tax law in *McLean* v. *Jephson* (123 N. Y. 142), said: ' It would be contrary to the traditions of our people, as well as to principles of justice and law, to permit the liberty of the citizen to be jeopardized by a strained and doubtful construction of the statute. (p. 147).' "

The rule of strict construction in favor of the taxpayer is thus held by the high court to apply to the local sales tax. It is interesting to observe that the local taxing authorities were themselves doubtful of the application of the sales law to service contracts like the one in question. Thus, the earlier regulations contained in articles 45 and 51 specifically exempted the type of business referred to by the plaintiff in the complaint. But the later regulation contained in article 95 was in express conflict with the earlier ruling. It is against the interpretation of the local law, as contained in article 95 of the regulations, that this redress is sought.

What is said about the exemption of the license to use reference books when this constitutes an integral and indivisible part of the service contract, also applies to the additional reference books and pamphlets furnished to subscribers under a service contract supplemental to those originally furnished. Such additional reference books are specifically referred to in the fifth paragraph of the complaint, and the high court must have been cognizant of that factor in its determination that the matters referred to in the complaint all dealt with service and were tax free. This result would logically follow from the fact that the additional reference books are also an integral part of the service; that they are furnished for the sole use of the subscriber; that they are confidential in their nature; that they are returned to the plaintiff after a short period of use, whereupon they are destroyed without being again made the subject of sale, barter or license in the form in which they are originally issued, and are thereby reduced to mere junk or waste.

Judgment is directed for the plaintiff for a declaratory judgment. Proposed findings passed upon. Let plaintiff submit decision and judgment on notice in accordance with the opinion and the approved findings.